UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| IN RE: | ) | 01-MDL-875 |
| | ) | |
| ASBESTOS PRODUCTS | ) | Philadelphia, PA |
| LIABILITY LITIGATION | ) | June 6, 2012 |
| | ) | 9:00 a.m. |


TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiffs:        ALLEN D. VAUGHAN, ESQUIRE
                           MICHAEL P. CASCINO, ESQUIRE
                           ROBERT G. McCOY, ESQUIRE
                           MILES HORTON, ESQUIRE
                           CASCINO VAUGHAN LAW OFFICES, LTD
                           220 South Ashland Avenue
                           Chicago, IL 60607


For the Defendants,        ROBERT N. SPINELLI, ESQUIRE
Hedmine Mines, Ltd.,       KELLEY, JASONS, McGOWAN, SPINELLI
etc.:                      & HANNA, LLP
                           Two Liberty Place
                           Suite 1900
                           50 South 16th Street
                           Philadelphia, PA 19102


For the Defendants,        MICHAEL W. DRUMKE, ESQUIRE
Georgia-Pacific:           KAITLYN N. CHENEVERT, ESQUIRE
                           SWANSON, MARTIN & BELL, LLP
                           330 North Wabash Avenue, Suite 3300
                           Chicago, IL 60611


For the Defendants,        MICHAEL ANTIKAINEN, ESQUIRE
Ingersoll-Rand; Trane      HEPLER & BROOM, LLC
US, Inc.; Terex Corp.;     103 West Vandalia Street, Suite 300
Pabst Brewing Co.;         P. O. Box 510
Foseco, Inc.:              Edwardsville, IL 62025


For the Defendants,        RICHARD M. LAUTH, ESQUIRE
Westinghouse; Hirco;       EVERT, WEATHERSBY & HOUFF
Hobart Brothers;           3405 Piedmont Road, Suite 200
Linde, etc.:               Atlanta, GA 30308

EXHIBIT
8

APPEARANCES: (cont.)

| | |
|---|---|
| For the Defendants,<br>Asten Industrial<br>Holdings; Unifrax;<br>Owens-Illinois;<br>Uniroyal, etc.: | DAVID M. SETTER, ESQUIRE<br>JACK McCANTS, ESQUIRE<br>FORMAN, PERRY, WATKINS, KRUTZ<br>& TARDY, LLC<br>Denver Financial Center, Tower 1<br>1775 Sherman Street<br>Suite 1900<br>Denver, CO 80203 |
| | JENNIFER M. STUDEBAKER, ESQUIRE<br>DANIEL J. MULHOLLAND, ESQUIRE<br>FORMAN, PERRY, WATKINS, KRUTZ<br>& TARDY, LLC<br>City Center, Suite 100<br>200 South Lamar Street<br>Jackson, MI 39201 |
| | EDWARD M. CASMERE, ESQUIRE<br>SCHIFF & HARDIN, LLP<br>233 South Wacker Drive, Suite 6600<br>Chicago, IL 60606 |
| For the Defendants,<br>Bechtel Corporation: | KATHRYN R. DOWNEY, ESQUIRE<br>MURNANE BRANDT, P.A.<br>30 East Seventh Street<br>Suite 3200<br>St. Paul, MN   55101 |
| For the Defendants,<br>Rockbestos: | JOSEPH SULLIVAN, ESQUIRE<br>SANCHEZ, DANIELS & HOFFMAN, LLP<br>333 W. Wacker Drive<br>Suite 500<br>Chicago, IL   60606 |
| For the Defendants,<br>Maremont Corporation: | ERIK LUDWIG, ESQUIRE<br>KASOWITZ, BENSON, TORRES &<br>FRIEDMAN, LLP<br>1633 Broadway<br>New York, NY   10019 |
| For the Defendants: | TOBIN J. TAYLOR<br>HEYL ROYSTER VOELKER & ALLEN<br>124 S.W. Adams Street, #600<br>Peoria, IL 61602 |
| | THOMAS BURNS, ESQUIRE<br>O'CONNELL, TIVIN, MILLER & BURNS<br>135 S. LaSalle Street, Suite 2300<br>Chicago, IL 60603 |
| Audio Operator: | CHRISTINA FRANZESE |

Transcribed by:              DIANA DOMAN TRANSCRIBING
                             P.O. Box 129
                             Gibbsboro, New Jersey  08026-0129
                             Office: (856) 435-7172
                             Fax:    (856) 435-7124
                             Email:  dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

4

1                              I N D E X

2     ATTORNEY-CLIENT PRIVILEGE                        PAGE

3     Argument by:

4           Mr. McCoy                               7, 14

5           Mr. Casmere                             9, 12

6           Mr. Sutter                                 10

7     The Court - Decision                          13, 15

8

9     PAYMENT OF WITNESS FEES

10    Argument by:

11          Ms. Studebaker                             15

12    The Court - Decision                             16

13

14    PLAINTIFFS' EXPERT WITNESS SCHEDULE

15    Argument by:

16          Ms. Studebaker                             21

17

18

19

20

21

22

23

24

25

1              (The following was heard via telephone conference at

2       9:00 a.m. in Judge's chambers.)

3              THE COURT:  Good morning.

4              COUNSEL:  Good morning, Your Honor.

5              THE COURT:  Can I take --

6              COUNSEL:  Good morning, Judge.

7              THE COURT:  Let me take role, if I may.  We have

8       Alan on, Alan Vaughan, Mike Cascino, Miles Horton on for

9       plaintiffs.  Anybody else on for plaintiffs?  I thought I

10      heard Mr. McCoy's voice, did I not?

11             MR. McCOY:  Yes.  Mr. McCoy is here.

12             THE COURT:  Okay.  All right.  Bob Spinelli, Tom

13      Burns, Jennifer Studebaker, Dave Setter, Jack McCance, Ed

14      Casmere, Ryan Connelly, Caitlin Chenevert, Joe Sullivan, Eric

15      Ludwig, Katie Downey, Mike Antikainen.  And anybody else on

16      for defendants?

17             MR. DRUMKE:  Mike Drumke, Your Honor.

18             THE COURT:  Mike Drumke.  Okay, Mike.

19             MR. LAUTH:  Richard Lauth.

20             MS. TAYLOR:  Tobin Taylor.

21             THE COURT:  I got Richard Lauth and Tobin Taylor.

22             MR. MULHOLLAND:  Denny Mulholland.

23             THE COURT:  And Denny Mulholland.  Okay.  All right.

24      The first thing that I just wanted to make you -- give you

25      heads up on, we've spent a bit of time on the defendant's

1    motion for protective order with respect to the request to

2    admit and request for production that were served upon the

3    defendants by plaintiffs.  And I think what I want to do with

4    that is have a separate call, not to burden everybody.  It

5    might take a little bit of time.  I do want to go through

6    these with some care.  And just to give you a heads up, I

7    could give you time tomorrow, starting at 11 east coast time,

8    or starting about 3:45 east coast time.  The other alternative

9    would be Friday, starting about 11:30 east coast time.  Let's

10   take --

11              MR. CASCINO:  Tomorrow, for the plaintiffs, Your

12   Honor.

13              THE COURT:  I'm sorry, Mike?

14              MR. CASCINO:  Tomorrow would be best for the

15   plaintiffs.

16              THE COURT:  Okay.

17              MR. SETTER:  Your Honor, Dave Setter.  Then how

18   about tomorrow afternoon?

19              THE COURT:  Okay.

20              MR. SETTER:  Did you propose 3:45 eastern?

21              THE COURT:  Yes.

22              MR. SETTER:  I'll set the call up for that time

23   then, if that's okay with everyone.

24              THE COURT:  Good.  Okay.  And I think you saw, I

25   think, I asked Joel to send out a brief email just

1    highlighting -- you know, I'm sure you guys -- it's been

2    briefed.  I think I have a sense of what your issues are, and

3    I just ask you to focus upon those points that are in -- just

4    to make sure you cover those points that are in the email that

5    Joel sent to you yesterday.

6             MR. SETTER:  We'll do that.

7             THE COURT:  Okay.  Let's go to the list from the

8    parties.  I have the plaintiff's -- first on the plaintiff's

9    list is the attorney-client privilege screening form marked at

10   Dr. Frank's deposition.  This I know nothing about.  What's

11   the -- what's the deal here?  Who's handling this for the

12   plaintiffs?

13            MR. McCOY:  This came up yesterday.  This is Bob

14   McCoy.  So this came up yesterday, Judge, when the defendants

15   had Dr. Arthur Frank, who's a medical doctor there in

16   Philadelphia, at his deposition, had -- and he's one of our

17   experts.  They had one of the -- what we call a client

18   screening forms of Cascino Vaughan, which are marked as

19   attorney-client confidential, and we use those to get intake

20   information from clients.  We don't disclose those to other --

21   outside of this firm.  But somehow one had apparently been

22   inadvertently produced during the processes of all these

23   productions, and the defense marked it, even though it's

24   labeled attorney-client communication, and started examining

25   Dr. Frank on it.

1          So I had -- I just objected and asserted the

2     privilege during the deposition.  And I -- I just don't

3     understand, frankly, why there was any use of that form at

4     all, and why it wasn't tendered back to us because that's how

5     I understand the law operates when you have something like

6     that, that's clearly marked attorney-client communication.  So

7     I -- that's why it's on the agenda, Judge, because I don't

8     know even that there should be any question with that.  That

9     document should be returned to our law firm.

10          THE COURT:  Okay.  What happened to the questioning

11     with respect to the document at the deposition?

12          MR. McCOY:  So the questioning -- questioning was

13     done because it didn't really involve any -- any issues that

14     would be so confidential as to -- as to require, you know, --

15          THE COURT:  Okay.

16          MR. McCOY:  -- not being able to answer by the

17     doctor.

18          THE COURT:  All right.

19          MR. McCOY:  But certainly the information in the

20     communication was confidential and should -- should be

21     protected and should be respected under the law.  I mean, that

22     -- that shouldn't have even gone forward, is the way that the

23     law reads.

24          THE COURT:  All right.  Well, I -- you might be

25     right, I don't know.  Anybody on the defendant's side was

1    involved in that yesterday is on the phone now?

2            MR. CASMERE:  Yes, Your Honor.  Edward Casmere.  I

3    was taking Dr. Frank's deposition.  I'm the one that marked

4    the exhibit.

5            THE COURT:  Okay.

6            MR. CASMERE:  The document was actually produced to

7    us from one of the treating physicians for Mr. O'Keefe.  It

8    was apparently -- it was apparently sent to the treating

9    physician, and it was produced to Forman Perry on September 9th

10   from one of the treating physicians, and it was in the medical

11   records that we had.

12           The document itself is a -- it's a form that's -- it

13   appears to have handwritten notes on it from the plaintiff

14   himself describing, you know, his name, his address, where and

15   how he was exposed to asbestos, what products he was exposed

16   to, what his smoking history was, all sorts of information

17   that are statements of a party.  There is a small notation at

18   the top that says confidential attorney-client work product,

19   but just because you label it as such, doesn't mean that it

20   is.  And having it been produced to us through a treating

21   physician, I think, changes the nature of the document to the

22   extent it even is privileged in the first place, which I don't

23   think the defense concedes it is.

24           I think that at this point, we certainly can tender

25   the document to the Court.  But I think we also need to take

1  the deposition of the treating physician to see how and why it

2  was that it was sent to them and what they did with it, if

3  anything.

4          MR. SETTER:  Your Honor, Dave Setter.  I just want

5  to add on that I now have been made aware of what this

6  document is, in our motion to compel filed on November 11th,

7  2001, we talk about a cover letter about the asbestos

8  screening program.  The Cascino Vaughan law offices'

9  enterprise known as the asbestos screening department sent

10  these out, and this is an asbestos screening packet that's

11  referred in one of the exhibits in that motion.  So it's been

12  raised to the Court.

13          We had a hearing, as you recall, back in December

14  about these issues.  We went around and around with this, all

15  the way up to Judge Robreno and back again.  This was included

16  as a transmission to one of the treating doctors to have --

17  Mr. Vaughan wanted him to generate some type of affidavit, and

18  apparently this information was sent to this doctor for that

19  purpose and -- along with the information of Dr. Schonfeld and

20  others.  These asbestos screening packets were requested to be

21  produced by us, and to the extent that they have been

22  produced, I think we need to have Cascino Vaughan produce all

23  of them for all the pending cases.

24          THE COURT:  Well, I guess that answers the question

25  I was asking myself, which was how significant is this in the

1    context of the overall.  And, you know, hearing you guys, I

2    guess it has more significance than a one --

3              MR. SETTER:  Very significant.

4              THE COURT:  Yeah.  All right.  All right.

5              MR. SETTER:  It's significant from the standpoint of

6    the issue that we went into in terms of how exposure

7    information has been generated by Cascino Vaughan's screening

8    personnel, as opposed to the physicians, and we need to test

9    that in depositions of doctors and so on and so forth, as well

10   as in the <u>Daubert</u> hearing.

11             The issue was if, in fact, the doctors gather this

12   information independently, that's a -- that's a different

13   matter.  But, in fact, most of the exposure information, from

14   what we can tell, has been generated by Cascino Vaughan

15   personnel, screening personnel, with their screening

16   department.  And this is a -- it says at the top of the

17   document, asbestos screening packet.  That's what it is.  And

18   we have some transmittal letters indicating that they have

19   sent these screening packets to various plaintiffs, if not all

20   of them.

21             THE COURT:  Did Dr. --

22             MR. SETTER:  And I think we're -- we're entitled to

23   all of them.

24             THE COURT:  Did Dr. Frank testify as to any

25   familiarity with the document?

1            MR. CASMERE:  No, Your Honor, he did not.

2            THE COURT:  Okay.  And then I take it -- then I take

3    it with respect to this document at this deposition, that was

4    really the end of it?

5            MR. CASMERE:  Yeah.  There's very limited questions,

6    Your Honor, and at the end of the deposition -- or actually

7    during the deposition, Mr. McCoy made his objection, and I

8    told him that I did not have any problem with him taking the

9    original document that we marked at the deposition.  And he's

10   now in custody of that document.  It is not being attached to

11   the transcript.  And we, at the deposition, said that -- and I

12   agreed that I would be more than happy to take this up with

13   the Court.  You know, the purposes for which I was trying to

14   use it are statements in the document about the gentleman's

15   exposure history and smoking history that are inconsistent

16   with other things, and I asked Dr. Frank if that had any

17   impact on his opinions in the case.

18           THE COURT:  All right.  Okay.  Well, it's clear to

19   me that this is not the kind of thing that can be resolved in

20   this context.  I do appreciate a heads up on it.  I guess I

21   would have thought that the most logical way to key this up,

22   if it needs to be keyed up, would -- at least certainly the

23   case in Mr. Setter's mind, I appreciate -- would be for some

24   kind of a motion to be generated from the defense with respect

25   to the question of whether or not there are -- this particular

The Court - Decision                      13

1    document and what other documents of a similar nature have

2    been produced, have not been produced, why they have not been

3    produced.  I mean, to be honest, Mr. Setter and Mr. McCoy, I

4    do not have a clear -- I mean, I recall generally, I mean,

5    we've obviously had a lot of discovery disputes, I don't

6    recall how this one -- the previous forum in which this one

7    arose.  So I'd have to be reminded about that.  Is it your

8    position, Mr. Setter, that either I or Judge Robreno have made

9    previous rulings which you believe would control this issue?

10          MR. SETTER:  I do, from the standpoint of

11   transmittal of documents back on, I believe, December 9th, Your

12   Honor, as part of that order.

13          THE COURT:  Yeah, that does sound right.  And I

14   don't remember what the full context of it was.  But I think

15   it needs to be brought up in that context.  So I hear Mr.

16   McCoy's comment.  I certainly agree that simply putting a

17   stamp on a document doesn't make it something with legal

18   implication.  It does indicate an intent on the part of the

19   party who placed the stamp, presumably the plaintiffs, I -- or

20   plaintiff's counsel, I understand that, and that could be of

21   -- could be of some evidentiary value.  But that doesn't

22   necessarily conclusively determine what the -- or the way the

23   document would have to be classified.

24          So I'm going to leave this back to the -- to you

25   all, the parties, and it sounds like maybe the defendant would

1    do it, but it's up to you all, the parties, to make the

2    determination as to how you want to proceed with respect to

3    motion, to the extent that you believe that the issue is

4    larger than just simply one document presented to one doctor

5    in one deposition that did not have a -- you know, from what

6    I'm hearing, didn't take up a lot of time and testimony.  So

7    that --

8             MR. SETTER:  Thank you, Your Honor.  I think a

9    motion to compel in all the pending cases --

10            THE COURT:  Yeah.

11            MR. SETTER:  -- is probably warranted.

12            THE COURT:  Yeah.  And that would give --

13            MR. SETTER:  We'll proceed accordingly.

14            THE COURT:  -- would give you guys an opportunity to

15   play back some of the history on this issue.  Mr. McCoy, is

16   there anything else you want to add to this, in light of the

17   comments made by Mr. Setter and Mr. Lauth?

18            MR. McCOY:  No, Judge.  Apparently, they said they

19   were aware of these a long, long time ago.  So, like I say,

20   these are regular -- routine attorney-client communications to

21   take your clients in the house.  So I -- I think that that --

22   that should be the end of it, Judge, and nobody should be

23   using these forms.

24            THE COURT:  Okay.

25            MR. McCOY:  They were aware a long time ago, --

1          THE COURT:  Yeah.  I --

2          MR. McCOY:  -- as I said, --

3          THE COURT:  Okay.  I understand.

4          MR. McCOY:  -- filed out.  Now, it's something that

5    simply because we noted that it was a privileged document,

6    that now the defense all said wants all of it, even though

7    they've known about these for months and months, Judge.  I

8    don't get it.

9          THE COURT:  Well, we'll see what the -- we don't --

10   I don't need any more discussion about it now, Mr. Setter.

11   Let's get this properly briefed up and we'll deal with it.

12          All right.  The next question concerns the issue

13   with respect to the payment of the witness fees.  I did review

14   the email that was sent by Mr. Hanbury yesterday, and I -- I

15   understand, I think, the nature of the problem.  I want to

16   know whether or not Ms. Studebaker or anybody from Forman

17   Perry wants to update me at all.  Is there anything new on

18   this?  I do understand broadly the position that apparently

19   some defendants have not yet paid in their fair share of the

20   expert fees, and I guess the question remains, you know, how

21   we do -- what we do about that, whether there are going to be

22   the legal implications with respect to cost.  But, Ms.

23   Studebaker, do you want to add anything to this, at this

24   point?

25          MS. STUDEBAKER:  Your Honor, the only thing is that

1    I would like to add, is that obviously the information that

2    Mr. Hanbury provided yesterday was very helpful in terms of

3    who has paid and who has not.  I do not know, and I don't

4    believe, that that information has been circulated outside the

5    defense liaison committee, which is problematic in terms of

6    CVLO being paid, because many of the participants are not

7    privy to that email or this call every week.  And so if they

8    intend to make any progress, my suggestion would be that

9    either they send that out or we send that out, so that all of

10   the defendants are aware of the deficiencies that still remain

11   with regard to the top 10 experts.

12            THE COURT:  Yeah.  Okay.  And on a -- then on a

13   going forward basis, this issue has been kicking around for a

14   little bit, I'm of the view that some of the protocols that

15   we've set up on other issues have been helpful to the

16   management of this case, and I think that I'd like to see

17   something done here.  And I'm going to ask Mr. Hanbury to

18   prepare a draft of a protocol, the elements of which I would

19   simply want to engraft upon the present practice that you all

20   have agreed to and engaged in, with some modification.  And

21   the way I understand this has been that Forman Perry has

22   agreed, and I hope would continue, to carry on the activity

23   with respect to the distribution out to the various defendants

24   who participated in particular depositions, so that there

25   would be an indication as to whatever the pro rata share would

 1   be to all defendants.  And whether or not that goes from the

 2   Forman Perry or goes from the plaintiffs, I'll leave to --

 3   I'll leave to you all to discuss maybe with Mr. Hanbury and

 4   Ms. Studebaker.

 5             But I think that what we need to do is indicate

 6   within the protocol that the invoices would be considered due

 7   and owing within a period of 30 days from the time of receipt;

 8   that perhaps we'd have a short grace period, maybe a 15-day

 9   grace period, something of that sort.  And that should there

10   be a failure on the part of any particular defendant to make a

11   payment, the responsibility for chasing that, I'm not going to

12   put on Forman Perry, I'm not going to obligate Forman Perry to

13   front all the money and then chase the collection afterwards,

14   I don't think that's fair, but I do think we can impose some

15   significant incentives and potential sanctions for the

16   defendants who have been recalcitrant or have been unable to

17   pay.  And something of the sort of, you know, some kind of --

18   some kind of, you know, somewhat punitive interest would be

19   applied.  One percent a month might not be enough; maybe two

20   percent a month, something of that sort.  Or maybe if anything

21   gets to the point where it has to be a motion, the cost to the

22   plaintiff in terms of fees to chase -- to chase any of this

23   money would be -- would be a sanction that would be imposed

24   upon any defendants.  But -- and if there's any issue with

25   respect to the amount, that that needs to be promptly brought

The Court - Decision                          18

1    to my attention and we'll resolve it.

2            My recollection is, I'm hesitating because I'm not

3    certain, but I thought we had previously written on the

4    question of the extent to which expert fees are reimbursed.

5    It's very clear to me from the rule that the time spent in

6    connection with preparing for the deposition is recoverable.

7    But that time spent is not -- it cannot be utilized for the

8    purpose of the strategizing that the -- that the expert would

9    have with his own -- his or her own counsel.  That's not

10   reimbursable.  But otherwise the time spent reviewing is

11   reimbursable.  It's the way I understand the rule was -- part

12   of rule -- I forget where it is, in Rule 37 or Rule 26.  I

13   forget.  But there's some language in there that makes it very

14   clear in the rule that the time spent in preparation is

15   reimbursable, and that's -- I've written on that, I know, in

16   other cases, if not this case.  And I'm happy to, you know,

17   resolve judgments and make those judgments myself, but I have

18   to know, obviously, if the -- you know, when that issue comes

19   up.

20           So, with those guidelines, let me ask -- let me ask

21   Mr. Hanbury to initiate some particular -- some protocol with

22   respect to this for my -- for Ms. Studebaker's review and

23   input, for my review, and obviously anybody else who needs to

24   -- who needs to be involved in it from the defendant's side.

25   And we'll get something implemented.

The Court - Decision                          19

1          So that's the way in which I would like to look at

2     it.  And it would -- you know, it would then be applicable as

3     to those folks now who are -- you know, who have outstanding

4     invoices.

5          But as a basic principle, I'm not going to accept

6     the plaintiff's proposition that Forman Perry is responsible

7     for 100 percent of the costs up front, and then they seek the

8     reimbursement.  I think Forman Perry -- I think it is

9     appropriate to have Forman Perry undertake the work they have

10    been undertaking, in terms of setting all this up and helping

11    to keep track of it, and the spreadsheets and that sort of

12    thing.  So hopefully that's enough guidance for plaintiffs to

13    begin to set us some kind of protocol.

14          So, Mr. Hanbury, I'm going to leave that with you to

15    work out with Ms. Studebaker.  I'm not going to set up a

16    specific time line on this, but I get the impression you're

17    motivated to try to get this thing done, and I appreciate

18    that.  I would hope it could be done within the next few days

19    and you'd have conversations with Ms. Studebaker.  If you all

20    need to have some separate conversation with me about that,

21    between the two of you, I'm happy to participate.  But I would

22    like to think that you could get something to me, you know,

23    say within the -- at least the early part of next week, at the

24    latest.  Is that -- am I clear enough on that?

25          UNIDENTIFIED COUNSEL:  Your Honor, this is Mike.

 1              MR. McCOY:  Yes, Your Honor.

 2              UNIDENTIFIED COUNSEL:  Kevin is down at a deposition

 3     and he will take care of that.  However, one of the things

 4     that Kevin pointed out to me yesterday, which is a little

 5     different from what the Court's focused on --

 6              THE COURT:  Sure.

 7              UNIDENTIFIED COUNSEL:  -- is that we're concerned on

 8     a going forward basis, in the past let's say Forman Perry

 9     would notice up the deposition, then each of the other

10     defendants would also notice up that deposition.  What we've

11     now seen is that only Forman Perry is noticing up the

12     deposition and we're concerned as to whether or not we're

13     going to know who's going to be splitting the fees for that

14     particular deposition on a go-forward basis.  And we will put

15     that as part of our protocol that Mr. Hanbury suggests.  But I

16     did want to make that point to the Court.

17              THE COURT:  Well, I think that's --

18              MS. STUDEBAKER:  And, Your Honor, this is Jennifer

19     Studebaker.  That -- the way that we have been determining the

20     pro rata share does not have to do -- anything to do with the

21     notices or who issues the notices.  It is actually the

22     defendants who participate in the deposition.

23              THE COURT:  Yeah.

24              MS. STUDEBAKER:  So I don't think that that's going

25     to be an issue.  But we can certainly include that in the

1   protocol.

2               THE COURT:  Okay.  Good.  Okay.  The next is the GP

3   document production.  What's the -- what's the status of that?

4   Is this Mr. Drumke or Ms. Chenevert's issue?  Who's --

5               MR. McCOY:  That was -- that was as a result of a

6   letter sent by Mr. Drumke yesterday.

7               THE COURT:  Letter sent to you, Bob?

8               MR. McCOY:  Yes.

9               THE COURT:  Okay.  Good.  The issue on the Bob Smith

10  deposition, I think you saw that we did sign the order on that

11  one.  Has that been -- all right, we -- okay.  Lauren --

12  Lauren says it has not yet been posted on the docket.  We'll

13  email that out to you all.  But the order does reflect the

14  continuance of the deposition to June 27th at 10:00 at the --

15  whatever this hotel in Sheboygan, Wisconsin.  So that's been

16  -- that's been done.  It's been -- we filed it, right?  We

17  filed it yesterday.  It was filed yesterday, and the order is

18  dated yesterday.  So, Lauren will send that out to her

19  distribution list by email, so you'll have that with

20  electronic signature.

21               All right.  The defendants have raised a question

22  with respect to the plaintiffs' expert witnesses and our

23  scheduling order.  So who's going to address that?

24               MS. STUDEBAKER:  Your Honor, this is Jennifer

25  Studebaker.  That was actually my agenda item.  Mr. McCoy and

Studebaker - Argument                                   22

1    I communicated yesterday afternoon, and they have provided us

2    with dates for a number of the witnesses that we did not have

3    previously.  So I don't think there's any need for any further

4    discussion on that point at this time.

5              THE COURT:  This is very impressive.  I have to tell

6    you I have a couple of interns here sitting around listening

7    to this, law students, and I'm sure they're very glad to hear

8    that we have lawyers that are cooperating with each other.

9    So, thank you very much for that.

10             That's all that we have on here for today.  So, I

11   guess we'll talk to you next Wednesday morning.  And those of

12   you that are involved in this request to produce and the

13   request to admit, 3:45 on Thursday afternoon east coast time.

14   Thanks very much, folks.

15             ALL:  Thank you, Your Honor.

16        (Proceedings concluded at 9:25 a.m.)

17                        *  *  *  *  *

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3          I, Roxanne Galanti, court approved transcriber,

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter.

7    _____          June 7, 2012

8    ROXANNE GALANTI

9    DIANA DOMAN TRANSCRIBING