# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: ASBESTOS PRODUCTS | : | Civil Action No: |
| LIABILITY LITIGATION (No. VI) | : | MDL 875 |
| | : | |
| This Document Relates to: | : | E.D. Pa. No: |
| FERGUSON v. A.C. AND S., INC. as well as | : | 08-90234 |
| the other cases on the attached list (all CVLO cases): | | |

### MEMORANDUM

DAVID R. STRAWBRIDGE, USMJ                                      November 16, 2012

Presently before this Court are **(1)** Defendant CBS Corporation's ("CBS") Motions for Sanctions (10-68073 Doc. 153; 08-90234 Doc. 73) , **(2)** Defendant Duke Energy Indiana, Inc's ("Duke Energy") Motion to Strike (08-89340 Doc. 96), **(3)** General Electric Company's ("GE") Motions to Strike (08-90058 Doc. 106; 08-90263 Doc. 96; 08-90132 Doc. 102; 08-90122 Doc. 112; 08-90063 Doc. 97; 08-90166 Doc. 110), and **(4)** Owens-Illinois, Inc.'s ("OI") Motions to Strike (09-60552 Doc. 93; 10-67814 Doc. 114; 09-60256 Doc. 82; 09-61026 Doc. 106; 10-67443 Doc. 175; 11-63501 Doc. 155; 08-90058 Doc. 104; 08-90132 Doc. 101; 08-90263 Doc. 95; 08-90166 Doc. 107; 10-67555 Doc. 116; 11-66746 Doc. 176; 11-63483 Doc. 352).  These motions are now fully briefed.  The Defendants request that we strike certain interrogatory responses asserting that they were not properly verified and that Plaintiffs failed to timely and adequately disclose the identities and circumstances of those who may be expected to offer evidence to support Plaintiff's cases, leaving Defendants unable to determine who should be investigated and deposed.  Defendants also ask us to preclude any use of evidence that is struck.

As discussed within, the motions will be granted in part and denied in part with the exception of CBS's two motions which will be denied in full.  Responses which are not verified by

the party will be struck.  Responses which are only partially verified by the party will be struck in part.  We will not, however, strike properly verified interrogatory responses as untimely, insufficient, or improper as we deem these requests to be premature.  We discuss within the background and late history of this litigation and the reasoning for our ruling.

## I.     DISCUSSION

These motions arise out of the discovery proceedings in some of the approximately 194 remaining asbestos related cases transferred to MDL-875 in which Plaintiffs are represented by Cascino Vaughan Law Offices ("CVLO").  On June 9, 2011, Judge Robreno referred these cases to us in order "to conduct pretrial procedures, supervision of discovery, settlement conferences, and preparation for trial."[1]  See e.g. (Ahnert v. CBS Corp., 10-67443 Doc. 34).  We began placing these cases on scheduling orders on July 15, 2011 and continued to amend the scheduling orders and re-distribute the cases, at the parties' urging, culminating in the current scheduling orders entered on April 11, 2012.[2]  Fact discovery has now closed in all cases.

### A.     The Unique Character of  Multi-District Ligation

---

[1] Previously, on May 4, 2009, these cases had been referred to Judge Reed for mediation. Upon his retirement, they were originally referred to us on April 18, 2011 to continue the mediation proceedings.  However, on June 9, 2011, the referral order was amended to reflect the decision to remove the cases from mediation and to prepare them for trial.

[2] We have significantly amended all of the current scheduling orders at least twice to provide more time for the parties to complete the necessary tasks.  In the most recent amendment, dated November 5, 2012, we extended the parties' dispositive motions deadlines in the CVLO-4 through 7 cases.  See e.g. (Miller v. A.C.& C., Inc., 09-60520 Doc. 128).

The purpose of multi-district litigation ("MDL") is to "promote the just and efficient conduct" of "civil actions involving one or more common questions of fact" that "are pending in different districts." 28 U.S.C. § 1407(a). MDLs are unique in that the court must maintain a balance between the individual character of each case, including the need to adjudicate each on its own merits, and the necessity for efficiency and uniformity in managing the aggregated whole. Indeed, "'multidistrict litigation is a special breed of complex litigation where the whole is bigger than the sum of its parts.'" In re Asbestos Prods. Liab. Litig. (No. VI), 278 F.R.D. 126, 129 (E.D. Pa. 2011) quoting In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 460 F.3d 1217, 1229 (9th Cir. 2006). Creating and adhering to scheduling and discovery orders is essential in balancing these needs. "The district court needs to have broad discretion to administer the [MDL] proceeding as a whole, which necessarily includes keeping the parts in line. Case management orders are the engine that drives disposition on the merits." Id. Certain levels of leniency and flexibility regarding discovery and scheduling matters, which would be acceptable in individual cases, can have the capacity to unhinge, or at the very least severely delay, a group of cases tied together in an MDL. See Id. at 130 (providing that "Scheduling Orders are issued in each case as a roadmap to reaching the merits of a claim in a crowded docket. However, if Plaintiffs' counsel fails to comply with the Court's roadmap without justification, as in this case, not only will the Court not reach the merits in a timely fashion, but the progress of other cases waiting in the queue will also be delayed"); Morgan v. 3M Co., 10-84925, 2011 WL 7573811 (E.D. Pa. Dec. 22, 2011) (same); In re Linerboard Antitrust Litigation, 98-5055, 2004 WL 966236, at *2 (E.D. Pa. May 4, 2004) (providing that the district court must have broad discretion in coordinating and administering multi-district litigation so that it can promote the just and efficient conduct of such actions).

3

With respect to these CVLO cases, the presiding judge, the Honorable Eduardo C. Robreno, directed that they be given special attention as early as May 4, 2009 when he appointed Senior District Court Judge Lowell A. Reed as the court annexed Mediator and authorized him to "utilize such powers and procedures set forth in Federal Rule of Civil Procedure 16 and Local Rule of Civil Procedure 53.3" and to resolve "[a]ny necessary discovery dispute[s]."[3]   Judge Reed managed the cases until April 18, 2011 when they were re-assigned to us in light of his retirement. During Judge Reed's tenure, he organized numerous telephone conferences and held as many as seven in-person conferences with counsel.  He also designated a defense liaison committee to provide coordination among the numerous defendants and counsel from CVLO.  Among the matters confronted were: (1) the collection of third-party discovery; (2) the collection and exchange of medical records; (3) the deposing of certain "ill or going witnesses" and identifying "for which plaintiffs each witnesses' testimony will be used, the defendant against which each witnesses' testimony will be used [and] the relevant time periods involved"; (4) the likelihood of <u>Daubert</u> challenges; and (5) importantly for our purposes, the service and response of standard interrogatories. A standard set of interrogatories was proposed and agreed to by all counsel.  It is our understanding that this set is one which had been developed and successfully utilized by counsel in the Wisconsin state court cases in which so many of them have been involved.  Under the agreement, these interrogatories were deemed served upon plaintiffs by October 1, 2010.  Critically, as relates to these particular motions, the interrogatories sought evidence that each Plaintiff felt he or she was going to be able to present in order to establish the essential elements of their cases.  Judge Reed ordered

---

[3] http://www.paed.uscourts.gov/mdl875r.asp, 5/04/2009 entry.

CVLO to "answer each of the interrogatories and serve answers upon the Mediator and all defendants herein no later than February 21, 2011."[4]

The standard interrogatories concern the critical topics of:  the asbestos-related diseases with which the Plaintiff was diagnosed and when (Interrogatories 4-5), the identity of Plaintiff's medical providers (Interrogatories 6 & 8-9), the damages claimed by Plaintiff (Interrogatory 12), Plaintiff's smoking history (Interrogatory 15), the identity of the Plaintiff's employers, relevant job sites, Plaintiff's forman and co-workers at each job site, the asbestos-containing products at each job site, and co-workers with knowledge of those products (Interrogatories 16-21), the identity of all causation witnesses for the Plaintiff (Interrogatory 26), and the identity of any statements from individuals who claim to have relevant knowledge about Plaintiff's alleged exposures  (Interrogatories 28-30).

At the heart of Judge Reed's effort was the concern about the need for the parties to exchange information such that they would be able to efficiently evaluate their cases and could reduce the number of cases in dispute by effectuating settlements or dismissals.  We assume this process had a salutary effect as the number of open cases dropped from approximately 5,000 to about 1,700 by April 2011 when the matters were first referred to us.

Like Judge Reed, Judge Robreno and we have repeatedly emphasized to the parties the importance of complying with discovery deadlines in these cases.  See e.g. (Pray v. A.C. & S, 08-91884 Doc. 94) (Robreno, J. (1) rejecting CVLO's argument that the "sheer number of cases they have brought have made it impossible for them to comply with all of the Court's scheduling orders", (2)  reminding the parties of the importance of adhering to the scheduling orders so that "litigation

_____

[4]  http://www.paed.uscourts.gov/mdl875r.asp, 11/15/2010 entry

5

of this scope [can] be efficiently administered", and (3) concluding that "[i]f counsel's resources do not permit adequate representation in <u>all</u> cases before the Court" then "counsel may need to either withdraw from representation of some of the plaintiffs or seek additional help.") (emphasis original); (Quist v. The Anaconda Co., 08-88398 Doc. 104) (Robreno, J. rejecting "the idea that a law firm's decision to represent a high number of clients constitutes 'good cause'" for extending deadlines, and concluding that "administrative challenges were clearly foreseeable when CVLO originally chose to file more than 5,000 cases in this litigation").  We must consider these motions in this context.

B.     **The Importance of Initial Disclosures and the Parties' Discovery Obligations**

Defendants contend that the underlying problem which has generated these motions is that Plaintiffs have not fulfilled their discovery obligations.  Plaintiffs have essentially conceded that they did not comply with certain discovery requirements imposed by Judge Reed including fully responding to the standard interrogatories within the time allotted to do so.  After the cases were put on the litigation track, Plaintiffs also failed to uphold their Fed. R. Civ. P. 26(a) obligations or their continued obligations under Fed. R. Civ. P. 33 to respond to both the standard and product specific interrogatories propounded upon them in a timely manner.  According to Defendants, Plaintiffs have been unwilling or unable to provide the Defendants with proper discovery particularly with respect to causation in these remaining cases.

In addition to the obligation to answer interrogatories within the time set out in Fed. R. Civ. P. 33 (or by court order), Plaintiffs also had an affirmative obligation under Fed. R. Civ. P. 26(a), without waiting for a request or order to do so, to provide, *inter alia*, "the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or

6

defenses." Fed. R. Civ. P. 26(a)(1)(A)(i).  Plaintiffs have conceded that they often did not timely provide these initial witness disclosures, in part because (1) they believed they had no such obligation to do so since they were not specifically so ordered in any scheduling order and (2) there was no Rule 26(f) scheduling conference after which their obligation would arise.[5]

As Rule 26 provides, parties are obligated to provide initial disclosures *unless* otherwise ordered by the court, not *until* they are ordered to do so, as advocated by the Plaintiffs. Fed. R. Civ. P. 26(a)(1)(A).  Moreover, the parties have participated in numerous conferences reasonably satisfying the Rule 26(f) requirements even if not specifically designated as such.  Since before the first scheduling orders were entered in these cases, the parties have discussed numerous times how the cases should be scheduled and have presented to the Court proposed scheduling orders.  This type of conference speaks to the very essence of  Rule 26(f).  After such discussions between the parties, we have engaged in in-person conferences, and innumerable telephone conferences, to discuss the new scheduling proposals.  Simply, Plaintiffs have no valid underpinning to their proposition that their duty to provide initial disclosures has not yet arisen. We should not have to remind Plaintiffs that the "discovery rules' requirements are mandatory, not optional."  Saria v. Massachusetts Mut. Life Ins. Co., 228 F.R.D. 536, 539 (S.D. W. Va. 2005); Walls v. Paulson, 250 F.R.D. 48, 52 (D.D.C. 2008) (explaining that "[t]he plaintiff apparently misinterprets the Federal Rules as optional. They are not.").

C.      **The Timeliness of Interrogatory Responses**

---

[5] Pursuant to Fed. R. Civ. P. 26(a)(1)(C), parties must make initial disclosures at or within fourteen days after the parties' Rule 26(f) conference.

Plaintiffs contend that because no scheduling order set deadlines for interrogatory responses, their responses would be timely as long as they were filed before the end of discovery. We rejected this same argument in Unzicker, and we do so again here.  2012 WL 1966028, at *3. Plaintiffs' argument ignores the requirement in Fed. R. Civ. P. 33(b)(2) that parties must respond to interrogatories within 30 days (or such other time as the court may determine) after being served. It also ignores the question of what effect untimely served interrogatory responses may have upon other parties who may, *inter alia*, want to consider taking depositions of witnesses whose testimony might expose their clients to liability.  We have admonished Plaintiffs for their failure to provide timely interrogatory responses in the past.  See e.g. (Akey v. A.C. & S., 09-60286 Doc. 142) (explaining that at the very least, Plaintiffs should have answered all standard interrogatories within thirty days after the most recent April 11, 2012 scheduling orders were issued and that, previously, Judge Reed had ordered all standard interrogatories be answered by February 21, 2011).

We also note, as we did in our Unzicker opinion, that Plaintiffs' position is contradicted by Fed. R. Civ. P. 11(b)(3) which provides that by presenting its complaint to the court:

> counsel has certified  . . . that "to the best of the [Plaintiff's] knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances* . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support *after a reasonable opportunity for further investigation or discovery*." (emphasis added.) Fed. R. Civ. P. 11(b)(3).

2012 WL 1966028, at *3.  While we do not suggest that it is necessary for Plaintiffs to have all of their evidence available before filing the complaint, Rule 11 establishes that Plaintiffs' obligations to investigate their cases and support them with evidence starts before their initial filing.  The development of Plaintiffs' factual and causal support for their cases should certainly be fully

developed by the end of discovery.  By providing the basic information requested in the standard interrogatories only at the very close of discovery, Plaintiffs seriously call into question the diligence with which they investigated their claims.

### 1.      The Deposition Protocol

The specific importance of timely discovery responses in these cases was made even more clear on August 4, 2011, when we issued the "Protocol for Plaintiff and Co-Worker depositions to be taken in Cascino Vaughan Law Offices MDL 875 cases assigned to Magistrate Judge David R. Strawbridge" ("Protocol").  The Protocol was jointly drafted by the parties, approved by the court, and has been in place with minor modifications for over fifteen months.  It was designed to give Plaintiffs the opportunity to preserve testimony for trial in an orderly manner such that Plaintiffs would not have to produce their witnesses more than once while at the same time giving Defendants the opportunity to properly prepare for depositions.

To accomplish these objectives, the Protocol provided that the deposition notices "must be served upon all counsel of record in the case(s) listed in the caption at least 14 days before the proposed date." (Protocol, ¶ 2).  The Protocol further provided that "no deposition may be noticed until . . . plaintiff's complete verified answers to standard interrogatories and complete fact witness disclosures" are served on the relevant parties.[6]  (Id., ¶ 13).  This provision directly addresses Defendants' concerns regarding the need for background discovery before deposing a Plaintiff or co-worker.

_____

[6] This deadline is also applicable to, *inter alia*, responses to any timely served product specific interrogatories since Paragraph 13 of the Protocol provides "[d]iscovery that has been timely served and is answerable prior to the date of the deposition shall [be] provided to the applicable parties by the date it is due so that it may be available for use prior to the deposition."

The parties recognized that the consequence of failing to provide complete interrogatory answers and other relevant discovery more than fourteen days before a deposition would be the likely imposition of prejudice upon Defendants.  It is against this background that we consider Plaintiffs' explanation for its long delayed discovery responses.

### 2.      Plaintiffs Flawed Reliance upon  Schneck v. I.B.M.

Plaintiffs also contend that their failures to provide timely interrogatory response supplements was due to their realization in April 2012 that they were obligated to produce evidence critical to their cases that was not just based on personal knowledge of the Plaintiff, but also upon information gathered by them as Plaintiffs' counsel.  Plaintiffs assert that they reached this conclusion after they came upon the unreported case of Schneck v. I.B.M., 92-4370, 1993 WL 765638 (D.N.J. July 27, 1993).  In Schneck, the plaintiffs failed to respond to certain aspects of the defendants' interrogatories claiming a lack of personal knowledge.  1993 WL 765638, at *5.  The court rejected this conclusion and noted that "[a] Party may not limit her answers to discovery to her own personal knowledge.  She must answer with any and all information available to her, including information held by her attorneys or others assisting in the litigation."  Id., at * 5-6.

We find Plaintiffs' surprising explanation unworthy of serious consideration.  Schneck does not stand for a new proposition.  It is difficult to accept Plaintiffs' counsel's claim that, prior to their reading of Schneck, they somehow believed that they would not be obligated to disclose witnesses with relevant information because individual Plaintiffs did not have personal knowledge.  We know of no authority that would support such a proposition.  The "[a]ssistance of counsel is clearly contemplated by the Federal Rules of Civil Procedure" when a party is completing discovery responses.  Exxon Corp. v. F. T. C., 384 F. Supp. 755, 758 n.3 (D.D.C.  1974); Leumi Fin. Corp. v.

10

Hartford Acc. & Indem. Co., 295 F. Supp. 539, 543 (D.N.Y. 1969)(finding that "it is unrealistic to suppose that a party draws answers to interrogatories himself").   We could well understand Defendants' substantial suspicions that it was Plaintiffs' strategy to disclose critical witnesses at the very last moment in an attempt to prejudice Defendants.   Such behavior would certainly be unacceptable.

### D.   The Appropriate Remedy for Issues Regarding Untimely Served Interrogatory Responses

We cannot over emphasize the importance of providing full and complete interrogatory responses and other basic supportive evidence in a timely manner such as to provide Defendants with the opportunity to investigate and depose witnesses who may provide causal evidence.  As discussed in Unzicker, we are fully aware of the prejudice to Defendants when, due to untimely or incomplete responses, they have not had the opportunity to depose witnesses since those witnesses were: (1) disclosed too late; or (2) timely disclosed but without sufficient detail to alert Defendants to their relevance.  See 2012 WL 1966028, at *4.  As the parties will recall, the circumstances in Unzicker were extreme.  Defendants were confronted with "an untimely, non-specific information dump" which disclosed "some 800 alleged coworker witnesses divulged two days before the end of discovery, who might have information pertaining to the question of Mr. Unzicker's exposure."  Id. The defendants there were also presented with 180 deposition transcripts in reference to some 17 additional job sites where exposure may have occurred.

In dealing with the Defendants' request in Unzicker that we impose a sanction permitted by Fed. R. Civ. P. 37(c)(1), which provides that a party who fails to timely supplement an earlier response "is not allowed to use that information or witness to supply evidence . . . unless the

11

failure was substantially justified or is harmless," we rejected Plaintiffs' argument that supplementation is timely simply because it was served prior to the close of discovery.  We hold the same position today, but where the extent and circumstances of the untimely disclosure differs from case to case, as in the motions currently before us, we deem it inappropriate to engage in the process of making distinctions between which untimely disclosure would call into play a Fed. R. Civ. P. 37(c)(1) sanction without providing a context in which a potential issue might arise.

That context strongly suggested to us by the Defendants is that in certain cases, Plaintiffs have and presumably will continue to submit declarations in response to motions for summary judgment which declarations would come from witnesses who may have been disclosed in a non-specific way with many other such witnesses shortly before close of discovery in a particular case.  We agree with Defendants that such a presentation would raise serious questions concerning the acceptance of such declarations, but we are unwilling at this time to grant Defendants' request as we will not enter an order which would, in a preemptory manner, preclude Plaintiffs from utilizing a declaration that has not yet been and may never be filed as part of a summary judgment response.

At the same time we accept the premise of the Defendants' concern and, as we discussed in Unzicker, we expect that if a declaration along the lines of what Defendants posit were presented in that case in an attempt to defeat summary judgment, the prejudice to Defendant would be palpable. We cannot, however, consider this proposition when there is no such declaration before us and we have no specifics as to how the parties might otherwise seek to make use of these responses.

We acknowledge that in the motions before us, the information provided by Plaintiffs in their interrogatory responses is of a more focused character and was, in some cases, divulged

somewhat earlier than two days before the close of discovery as in <u>Unzicker</u>.   Nonetheless, Defendants' request that we strike verified interrogatory responses based on the possible prejudice associated with the extent and character of information contained in the responses as well as the date when they were served, is premature.   Without knowing how Plaintiffs would seek to use this information in a given case, we are unable to grant such relief.   The judge presiding over the case when, and if, a Plaintiff attempts to utilize such a declaration or otherwise rely on such information from an interrogatory response will be in a much better position to engage in the prejudice analysis. Accordingly, we deny Defendants' request to strike these discovery responses as premature.

### E.   The  Lack of Verified Interrogatory Answers

As we held in <u>Unzicker</u>, interrogatory responses not verified by the Plaintiff are not valid responses.  2012 WL 1966028, at * 2 (citing <u>Braley v. Grenoble</u>, 494 F.2d 466 (3d Cir. 1974)); <u>see also</u> <u>McDougall v. Dunn</u>, 468 F.2d 468, 472 (4th Cir. 1972) (rejecting the validity of interrogatory answers signed by counsel rather than the party and recognizing that the rule requiring client verification should not "be relaxed merely because of difficulties relating to the availability of the party").   Such verification is essential for establishing the truth of the answers so that they may be relied on by the parties during the litigation and at trial.   See <u>Villareal v. El Chile, Inc.</u>, 266 F.R.D. 207, 211 (N.D. Ill. 2010) (finding that  "requiring a party to sign interrogatory responses under oath serves the critical purpose of ensuring that the responding party attests to the truth of the responses"); <u>Saria</u>, 228 F.R.D. at 538-539 (holding that since "interrogatory responses may be used at trial, they are nothing short of testimony. When responses are only signed by an attorney, and not by the client, the attorney has effectively been made a witness.  Likewise, the failure to provide client verification undermines the dispositive motion process under Rule 56(c)"); <u>Walls</u>, 250 F.R.D. at 52 (finding that

13

party verification of interrogatory responses "is critical because interrogatories serve not only as a discovery device but as a means of producing admissible evidence; there is no better example of an admission of a party opponent, which is admissible because it is not hearsay, than an answer to an interrogatory") (internal quotation marks omitted).

Plaintiffs argue that interrogatory responses based purely on counsel's knowledge and not a plaintiff's personal knowledge can be signed only by counsel. They base this argument on the fact that Fed. R. Civ. P. 33(b)(1) states that the *party* to whom the interrogatories are directed must answer them, even though Rule 33(b)(5) requires the *person* making the answers to sign them. Plaintiffs contend that because the word "party" is not used in Rule 33(b)(5), the drafters contemplated that some "person" other than the "party" could sign the answers. Plaintiffs provide no case law supporting this novel assertion. Nor were we able to uncover any.

Rules 33(b)(1)(A) and (b)(5) provide that "the party to whom [the interrogatories] are directed" (here, Plaintiffs) must answer them and "the person who makes the answers must sign them" (again, here, Plaintiffs). With an individual plaintiff, unlike a corporation, this is, by the clear language of the Rules, the same person. This result is also supported by (1) the fact that courts understand that counsel will very likely provide substantial assistance to their clients when answering interrogatories, Exxon Corp., 384 F. Supp. at 758 n.3; Leumi Financial Corp., 295 F. Supp. at 543, (2) the clear body of law establishing the reasons for and importance of party verification, McDougall, 468 F.2d at 472; Villareal, 266 F.R.D. at 211; Saria, 228 F.R.D. at 538-539; Walls, 250 F.R.D. at 52, and (3) the acknowledgment by courts that unverified interrogatory responses are flawed. See Unzicker, 2012 WL 1966028, at *2 (and the cases cited therein). Accordingly, and as we held

14

previously in <u>Unzicker</u>, we hold again that any interrogatory responses that have not been verified by

Plaintiff, regardless of the source of the knowledge in those responses, must be struck.[7]

        In nine of the cases before us at this time, Plaintiffs served interrogatory responses

which contain a limited verification  Specifically, Plaintiffs verify that:

> For any answers that are not statements or objections of plaintiff's
> attorney [Plaintiff], states that all other answers provided in the
> [interrogatory answers] are true and correct to the best of their
> information and belief.

<u>See</u> <u>e.g.</u> (<u>Austin v. Cinergy Corp.</u>, 08-89340, Ex. A. p. 15).  For various responses in the set, Plaintiffs

claim to have no personal knowledge of the answer and go on to affirmatively set out that the

responses are "stated" or "made" by counsel.  While it is unclear to us why CVLO are concerned

about whether Plaintiffs may have personal knowledge of the answers or not, our concern goes to the

question of whether Plaintiff has provided a verification as to the accuracy of the responses.  The

authorities are clear that this verification is mandatory and a substitute by counsel is simply

insufficient.  <u>See</u> <u>McDougall</u>, 468 F.2d at 472.  Thus, in the cases in which Plaintiff's verification is

qualified, it will be necessary for us to strike any responses where it is clear that the answer has been

"made" or "stated" by counsel.  Specific language which has been used by Plaintiffs' counsel in the

responses to denote that the answers are theirs, and, thus, not verified by the Plaintiff include (1)

---

[7] We note, that for standard interrogatory answers served by February 21, 2011, pursuant
to Judge Reed's October 5, 2010 and November 15, 2010 mediation orders, "[i]n lieu of a
plaintiff's signature to the answers, a signed certification to the accuracy of a plaintiff's answers
to the mediation interrogatories by plaintiff's counsel of record [would] be adequate for purposes
of mediation only.  Before counsel certifies to the accuracy of the answers, plaintiffs' counsel
will contact the plaintiff or the witness and confirm the accuracy of the information forming the
basis for all answers."  http://www.paed.uscourts.gov/mdl875r.asp.  Because this exception
existed only during the mediation stage of these proceedings, and only if counsel signed a
certification (which to our knowledge has never been attached to a set of interrogatory answers),
it is of no concern to us now.

"Plaintiffs' attorneys *make* the following statement of claims being made and subject to proof at trial" (2) "Based on their investigation, Plaintiffs' attorneys *state*", "My attorneys further *state* that", or "Plaintiff's counsel *states*" and (3) "The answer above was *made* by plaintiffs attorney as a statement of claims made and are subject to proof at trial."

We acknowledge, of course, that information contained in responses to interrogatories often are prepared by counsel and, thus, we do not deem language such as (1) "Plaintiff does not know. Based upon investigation by plaintiffs attorneys" or (2) "[a]dditional brands that plaintiffs' attorneys claim [Plaintiff] was exposed to subject to proof at trial", to denote an answer made solely by the attorney. We accept that counsel will investigate their clients' claims and will aid in answering discovery. We cannot, however, accept any responses where, as here, Plaintiff's verification specifically disclaims "statements . . . of plaintiff's attorney."

## II.    DISCUSSION OF THE INDIVIDUAL MOTIONS

Having set forth the general principles above, applicable in all CVLO cases, we now turn our attention to the four sets of motions at issue.

### A.    CBS's Motions for Sanctions

The motions to strike filed by CBS involve two cases (1) Rodney Plue 10-68073 and (2) Rosamond Ferguson 08-90234. CBS seeks the entry of an order striking Plaintiff's interrogatory responses in each case. Both of these cases had a June 15, 2012 fact discovery deadline and are in CVLO-1&2 subgroup C.

In Plue, CBS seeks to strike "Plaintiff's First Response to Standard Interrogatories - May 31, 2012" and an amended version of the responses entitled "Plaintiff's First Response to Standard Interrogatories - June 13, 2012." See (10-68073 Doc. 153 Exs. A & B). Both sets of

interrogatory answers contain a verification from Plaintiff dated May 31, 2012. Because Plaintiff has verified these responses, we will not strike them. As we stated above, we appreciate Defendants' concerns regarding the potential prejudice which could arise should Plaintiff seek to use the declaration of a co-worker listed within these interrogatory responses which arguably has been insufficiently and/or untimely disclosed in opposition to a motion for summary judgment. While we agree with Defendants that such a presentation may raise serious questions, we are unwilling to grant them the specific relief they request as they ask us to strike the responses in a peremptory manner and enter an order precluding the Plaintiffs from utilizing a declaration that has not been filed and may never be filed. Should the concern articulated by Defendants become manifest by the attempted presentation of a declaration at the summary judgment stage, the court, through Judge Robreno, will have the opportunity to consider the implications of any deficiencies in this discovery.

In <u>Ferguson</u>, CBS seeks to strike "Plaintiff's First Response to Standard Interrogatories - June 11, 2012." <u>See</u> (08-90243 Doc. 73 Ex. A). These interrogatory responses were verified by Plaintiff. For the same reasons set out above with respect to the motion in <u>Plue</u>, we decline to strike them since CBS's request would have us strike a declaration that has not been and may never be filed.

**B.    Duke Energy's Motion to Strike**

In the case of Juanita Austin, 08-89340, Duke Energy seeks to strike (1) "Plaintiff's First Response to Standard Interrogatories - July 16, 2012", (2) "Plaintiff's Supplemental Response to Standard Interrogatories - August 3, 2012", and (3) a second document entitled "Plaintiff's Supplemental Response to Standard Interrogatories - 8/3/12." <u>See</u> (08-89340 Doc. 96, Exs. A-C). Duke Energy also seeks to preclude any undisclosed or improperly disclosed witnesses from testifying. This case is from the CVLO-4 group with an August 3, 2012 fact discovery deadline.

Only "Plaintiff's First Response to Standard Interrogatories - July 16, 2012" is verified, even though the verification is purportedly limited to "answers that are not statements or objections of plaintiff's attorney." The other two sets of responses are not verified by Plaintiff. For the reasons previously set out in Section I.E., they will be struck.

For the reasons set forth above, we will not strike any interrogatory answers in the July 16, 2012 set which have been verified. However, in light of the limited verification, and as discussed previously in Section I.E., any interrogatory answers (as opposed to objections) which are clearly provided by counsel will be struck as unverified. In this set of interrogatories, that includes the answers to interrogatories 6, 8-10, 17, 19, 26-31, 32(a)-(c), 33-34. Again we are cognizant of the potential prejudice which could arise should Plaintiff attempt to use information from the verified interrogatory answers which was arguably untimely or improperly disclosed. If such a situation should arise, Defendants will be free to seek its preclusion from the presiding judge at that time.

### C.    GE's Motions to Strike

Each of the six cases in which GE's motion was filed is in the CVLO-4 case group wherein discovery closed on August 3, 2012. These interrogatory responses were all served between August 3, 2012 at 11:39 p.m. and August 4, 2012 at 12:02 a.m. See (08-90122 Doc. 112 Exs. G-Q). GE also seeks to preclude Plaintiffs from relying on the testimony of any previously undisclosed or improperly disclosed witnesses. None of the interrogatory answers at issue are signed by the Plaintiffs but rather, are signed by counsel and provide that the answers are based on attorney knowledge from CVLO's new databases. As a result, and as set forth above in Section I.E., they will be struck for being unverified.

### D.    OI's Motions to Strike

18

OI moves to strike various sets of interrogatory responses in thirteen cases based on Plaintiffs' failure to properly disclose witnesses and failure to verify their responses. OI also seeks to preclude any undisclosed or improperly disclosed witness from testifying.

### 1.    Connell 09-60552

In <u>Connell</u>, OI seeks to strike (1) "Plaintiff's First Response to Standard Interrogatories", (2) "Plaintiff's First Response to Standard Interrogatories - February 14, 2012", and (3) "Plaintiff's Supplemental Signed Response to Standard Interrogatories - June 19, 2012." <u>See</u> (09-60552 Doc. 93 Exs. B-D). <u>Connell</u> is in the CVLO-3 case group wherein discovery closed July 13, 2012. Only "Plaintiff's Supplemental Signed Response to Standard Interrogatories - June 19, 2012" contains a client verification, however, it is only for "answers that are not statements or objections of plaintiff's attorney." The other two sets of responses are not verified by Plaintiff. Thus, they are fatally flawed and must be struck.

For the reasons set forth above, we will not strike any interrogatory answers in the June 19, 2012 set which have been verified. However, in light of the limited verification, and as discussed previously in Section I.E., any interrogatory answers (as opposed to objections) which are clearly provided by counsel will be struck as unverified. In this set of interrogatories, that includes the answers to interrogatories 6 (except for the supplemental response dated June 18, 2012), 8-10, 16 (except for the June 18, 2012 supplement to subsections a-d), 17, 19 (except the supplement dated June 18, 2012), 20, 21, 26-31, 32(a)-(c) , 33-36. Again we are cognizant of the potential prejudice which could arise should Plaintiff attempt to use information from the verified interrogatory answers which was arguably untimely or improperly disclosed. If such a situation should arise, Defendants will be free to seek its preclusion from the presiding judge at that time.

2.      **Held 10-67814**

In <u>Held</u>, OI seeks to strike (1) "Plaintiff's First Response to Standard Interrogatories",
(2) "Plaintiff's Supplemental Signed Response to Standard Interrogatories - 6/20/2012", and (3)
"Plaintiff's Response to Defendant Owens-Illinois Inc.'s Interrogatories and Request for Production
of Documents." <u>See</u> (10-67814 Doc. 114 Exs. B, D, E). <u>Held</u> is also a CVLO-3 case with a fact
discovery deadline of July 13, 2012. "Plaintiff's First Response to Standard Interrogatories" and
"Plaintiff's Response to Defendant Owens-Illinois Inc.'s Interrogatories and Request for Production
of Documents" are unverified. They will be struck. "Plaintiff's Supplemental Signed Response to
Standard Interrogatories - 6/20/2012" is verified, albeit the verification is dated December 7, 2011.[8]
Thus, we will not strike this set of responses. As discussed previously, we will defer the question of
prejudice to Defendants regarding Plaintiff's use of any arguably untimely or improperly disclosed
information until Plaintiff attempts to use such materials.

3.      **Suoja 09-60256**

In <u>Suoja</u>, OI seeks to strike (1) "Plaintiff's First Response to Standard Interrogatories",
(2) "Plaintiff's First Signed Response to Standard Interrogatories - 6/20/12", (3) "Plaintiff's
Supplemental Signed Response to Standard Interrogatories - 6/28/12", and (4) "Plaintiff's Response
to Defendant Owens-Illinois, Inc.'s Product Specific Interrogatories and Request for Production of
Documents." <u>See</u> (09-60256 Doc. 82 Exs. B-E). Discovery closed on July 13, 2012 in this case as
it is part of the CVLO-3 case group. Only "Plaintiff's First Signed Response to Standard
Interrogatories - 6/20/12" is verified, however, the verification is only for "answers that are not

---

[8] Although the verification was dated over six months previous and had been attached to a
previous set of interrogatory responses, until evidence establishes otherwise, we will presume
that Plaintiff consented to have that verification form attached to these answers as well.

20

statements or objections of plaintiff's attorney." Thus, the first, third, and fourth sets of unverified interrogatory responses at issue are fatally flawed and shall be struck.

       For the reasons set forth above, we will not strike any interrogatory answers in the June 20, 2012 set which have been verified.  However, in light of the limited verification, and as discussed previously in Section I.E., any interrogatory answers (as opposed to objections) which are clearly provided by counsel will be struck as unverified.  In this set of interrogatories, that includes the answers to interrogatories 6, 8-10, 17, 19, 21, 26-31, 32(a)-(c), 33-36.  Again we are cognizant of the potential prejudice which could arise should Plaintiff attempt to use information from the verified interrogatory answers which was arguably untimely or improperly disclosed.  If such a situation should arise, Defendants will be free to seek its preclusion from the presiding judge at that time.

### 4.  Schmoll 09-61026

       In Schmoll, OI's seeks to strike (1) "Plaintiff's First Response to Standard Interrogatories" and (2) "Plaintiff's First Signed Response to Standard Interrogatories - 6/24/12."  See (09-61026 Doc. 106 Exhs A & B).  Schmoll is a CVLO-3 case in which discovery closed on July 13, 2012.  "Plaintiff's First Response to Standard Interrogatories" is undated and unverified.  Thus, it is flawed and shall be struck.  "Plaintiff's First Signed Response to Standard Interrogatories - 6/24/12", was verified by the Plaintiff and was actually served on July 6, 2012.  The verification is only for "answers that are not statements or objections of plaintiff's attorney."

       For the reasons previously set forth, we will not strike any interrogatory answers in the June 24, 2012 set which have been verified.  However, in light of the limited verification, and as discussed previously in Section I.E., any interrogatory answers (as opposed to objections) which are clearly provided by counsel will be struck as unverified.  In this set of interrogatories, that includes

the answers to interrogatories 6, 8-10, 19, 21, 16-31, 32(a)-(c), 33-36.  We are aware of the potential prejudice which could arise should Plaintiff attempt to use information from the verified interrogatory answers which was arguably untimely or improperly disclosed.  If such a situation should arise, Defendants will be free to seek its preclusion from the presiding judge at that time.

### 5.      Ahnert 10-67443

In <u>Ahnert</u>, OI seeks to strike (1) "Plaintiff's First Response to Standard Interrogatories", (2) "Plaintiff's Response to Standard Interrogatories 3/22/2012", (3) "Supplemented Plaintiffs First Response to Standard Interrogatories", (4) "Plaintiffs' Second Supplementation to Standard Interrogatories - 6/29/12", and (5) "Plaintiff's Response to Defendant Owens-Illinois, Inc.'s Product Specific Interrogatories and Request for Production of Documents." <u>See</u> (10-67443 Doc. 175 Exs. D-H).  As a CVLO-3 case, discovery in <u>Ahnert</u> closed on July 13, 2012.

"Plaintiff's First Response to Standard Interrogatories", "Plaintiff's Response to Standard Interrogatories 3/22/2012", and "Supplemented Plaintiffs First Response to Standard Interrogatories" are all fatally flawed in that they are unverified.[9]  Included with "Plaintiffs' Second Supplementation to Standard Interrogatories - 6/29/12" is a verification from Plaintiff dated March 23, 2011.  However, the verification references only three specific sets of interrogatory answers dated March 11, 2011.  Therefore, this verification does not apply to this June 29, 2012 set of interrogatory responses and we consider the responses unverified.  As we set out in Section I.E. and in our <u>Unzicker</u>

---

[9] Attached as an exhibit to "Plaintiff's Response to Standard Interrogatories 3/22/2012","Supplemented Plaintiffs First Response to Standard Interrogatories,"and "Plaintiffs' Second Supplementation to Standard Interrogatories - 6/29/12" is a declaration by the Plaintiff signed January 8, 2011. This declaration is the subject of another pending motion.  <u>See</u> (<u>Ahnert</u> 10-67443 Doc. 232).

22

decision, interrogatory responses that have not been verified by plaintiff, regardless of the source of knowledge, must be struck.

"Plaintiff's Response to Defendant Owens-Illinois, Inc.'s Product Specific Interrogatories and Request for Production of Documents" is verified, but only as to "answers that are not statements or objections of plaintiff's attorney." It was also served the day before the close of discovery. As with partially verified responses to the standard interrogatories, we will not strike any interrogatory answers which have been verified. However, in light of the limited verification, and as discussed previously in Section I.E., any interrogatory answers (as opposed to objections) which are clearly provided by counsel will be struck as unverified. In this set of interrogatories, that includes the answers to interrogatories 1-6, 8, 10-14. Again we are cognizant of the potential prejudice which could arise should Plaintiff attempt to use information from the verified interrogatory answers which was arguably untimely or improperly disclosed. If such a situation should arise, Defendants will be free to seek its preclusion from the presiding judge at that time.

### 6.    Brazzoni 11-63501

In <u>Brazzoni</u>, OI seeks to strike (1) "Plaintiff's First Response to Standard Interrogatories", (2) "Plaintiff's First Signed Response to Standard Interrogatories - 7/10/12", and (3) "Plaintiff's Supplemental Response to Standard Interrogatories - 8/3/12." <u>See</u> (11-63501 Doc. 155 Exs. B-D). <u>Brazzoni</u> is a CVLO-4 case with an August 3, 2012 fact discovery deadline.

All three sets of interrogatory responses are unverified and, therefore, will be struck.

### 7.    Fata 08-90058

23

In <u>Fata</u>, OI seeks to strike (1) "Plaintiff's First Response to Standard Interrogatories", (2) "Plaintiff's First Response to Standard Interrogatories – July 5, 2012", (3) "Plaintiff's Supplemental Response to Standard Interrogatories – 8/3/12", and (4) "Plaintiff's Response to Owens-Illinois Inc.'s Product Specific Interrogatories and Request for Production." <u>See</u> (08-90058 Doc. 104 Exs. B-E). <u>Fata</u> is a CVLO-4 case with an August 3, 2012 fact discovery deadline. Only "Plaintiff's First Response to Standard Interrogatories – July 5, 2012" is verified by the Plaintiff. However, the verification is only for "answers that are not statements or objections of plaintiff's attorney." "Plaintiff's First Response to Standard Interrogatories", "Plaintiff's Supplemental Response to Standard Interrogatories – 8/3/12", and "Plaintiff's Response to Owens-Illinois Inc.'s Product Specific Interrogatories and Request for Production" will be struck for being unverified.

For the reasons set forth above, we will not strike any interrogatory answers in the July 5, 2012 set which have been verified. However, in light of the limited verification, and as discussed previously in Section I.E., any interrogatory answers (as opposed to objections) which are clearly provided by counsel will be struck as unverified. In this set of interrogatories, that includes the answers to interrogatories 6, 8-10, 17, 19, 21, 26-31, 32(a)-(c), 33-36. We are aware of the potential prejudice which could arise should Plaintiff attempt to use information from the verified interrogatory answers which was arguably untimely or improperly disclosed. If such a situation should arise, Defendants will be free to seek its preclusion from the presiding judge at that time.

### 8.    Jones  08-90132

In <u>Jones</u>, OI seeks to strike (1) "Plaintiff's First Response to Standard Interrogatories", (2) "Plaintiffs' Supplemental Response to Standard Interrogatories – 4/17/12", (3) "Plaintiffs' First Response to Standard Interrogatories – July 15, 2012", (4) "Plaintiff's Supplemental Signed Response

to Standard Interrogatories – 7/20/12", and (5) "Plaintiff's Supplemental Response to Standard Interrogatories – 8/3/12." See (08-90132 Doc. 101 Exs. B-F).  Jones is a CVLO-4 case with an August 3, 2012 fact discovery deadline.  Only "Plaintiff's Supplemental Signed Response to Standard Interrogatories – 7/20/12" is plaintiff verified, however, the verification is only for "answers that are not statements or objections of plaintiff's attorney."  The remaining four sets of unverified responses are insufficient and will be struck.

Regarding Plaintiff's partially verified July 20, 2012 response, we will not strike any interrogatory answers which have been verified.  However, in light of the limited verification, and as discussed previously in Section I.E., any interrogatory answers (as opposed to objections) which are clearly provided by counsel will be struck as unverified.  In this set of interrogatories, that includes the answers to interrogatories 6, 8-10, 17, 19, 21, 26-31, 32(a)-(c), 33-36.  We are cognizant of the potential prejudice which could arise should Plaintiff attempt to use information from the verified interrogatory answers which was arguably untimely or improperly disclosed.  If such a situation should arise, Defendants will be free to seek its preclusion from the presiding judge at that time.

### 9.    Jackson        08-90263

In Jackson, OI seeks to strike (1) "Plaintiff's First Response to Standard Interrogatories", (2) "Plaintiffs' Supplemental Response to Interrogatory #5", (3) "Plaintiffs' Supplemental Response to Standard Interrogatories - 4/17/12", (4) "Plaintiffs' First Response to Standard Interrogatories – July 15, 2012", and (5) "Plaintiff's Supplemental Response to Standard Interrogatories – 8/3/12." See (08-90263 Doc. 95 Exs. B-E, G).  Jackson is a CVLO-4 case with an August 3, 2012 fact discovery deadline.  All of the interrogatory responses are fatally flawed in that they were not verified by the Plaintiff.  Thus, they are all insufficient and will be struck.

25

**10.   Willey         08-90166**

In Willey, OI seeks to strike (1) "Plaintiff's First Signed Response to Standard Interrogatories - 8/3/12" and (2) "Plaintiff's Supplemental Response to Standard Interrogatories - 8/3/12." See (08-90166 Doc. 107, Exs. B-C). Willey is a CVLO-4 case with an August 3, 2012 fact discovery deadline. "Plaintiff's Supplemental Response to Standard Interrogatories - 8/3/12" is unverified and, thus, will be struck.

"Plaintiff's First Signed Response to Standard Interrogatories - 8/3/12" is verified, however, the verification specifically excludes any "statements or objections of plaintiff's attorney." Regarding this response, we will not strike any interrogatory answers which have been verified. However, in light of the limited verification, and as discussed previously in Section I.E., any interrogatory answers (as opposed to objections) which are clearly provided by counsel will be struck as unverified. In this set of interrogatories, that includes the answers to interrogatories 6, 8-10, 17, 19, 21, 26-31, 32(a)-(c), 33-36. We are cognizant of the potential prejudice which could arise should Plaintiff attempt to use information from the verified interrogatory answers which was arguably untimely or improperly disclosed. If such a situation should arise, Defendants will be free to seek its preclusion from the presiding judge at that time.

**11.   Kelley         10-67555**

In Kelley, OI seeks to strike (1) "Plaintiff's First Response to Standard Interrogatories", (2) "Plaintiff's Verified First Response to Standard Interrogatories - 10/27/11", (3) "Plaintiff's Supplemental Signed Response to Standard Interrogatories - 7/16/12", and (4) "Plaintiff's Supplemental Response to Standard Interrogatories - 8/3/12." See (10-67555 Doc. 116 Exs. B-E). Kelley is a CVLO-4 case with an August 3, 2012 fact discovery deadline. Only "Plaintiff's

26

Supplemental Signed Response to Standard Interrogatories - 7/16/12", which was actually served on August 3, 2012, is verified, however, Plaintiff does not verify any statements made by counsel.  Since the other three responses at issue are unverified, they must be struck.

For the reasons set forth above, we will not strike any interrogatory answers in the July 16, 2012 set which have been verified.  However, in light of the limited verification, and as discussed previously in Section I.E., any interrogatory answers (as opposed to objections) which are clearly provided by counsel will be struck as unverified.  In this set of interrogatories, that includes the answers to interrogatories 6 (except for the July 5, 2012 supplemental response), 8-10, 16 (except for the July 5, 2012 supplement to subsections a-d), 17, 19, 20, 21, 26-31, 32(a)-(c) , 33-36.  We are aware of the potential prejudice which could arise should Plaintiff attempt to use information from the verified interrogatory answers which was arguably untimely or improperly disclosed.  If such a situation should arise, Defendants will be free to seek its preclusion from the presiding judge at that time.

### 12.    Zellner          11-66746

In Zellner, OI seeks to strike (1)  "Plaintiffs' Supplemental Response to Standard Interrogatories - 4/17/12", (2) "Plaintiff's First Signed Response to Standard Interrogatories - 7/17/2012", and (3) "Plaintiff's Supplemental Response to Standard Interrogatories - 8/3/12."  See (11-66746 Doc. 176 Exs. B-D).  Fact discovery ended on August 3, 2012 in this CVLO-4 case.  None of these interrogatory responses are verified.  Therefore, they must all be struck.

### 13.    VanStippen   11-63483

In VanStippen, OI seeks to strike (1) "Plaintiff's First Response to Standard Interrogatories - May 25, 2012" and (2) "Plaintiff's Supplemental Response to Standard

Interrogatories - 8/3/12."  <u>See</u> (11-63483 Doc. 352 Exs. B-C).  This case is a CVLO-4 case with an

August 3, 2012 fact discovery deadline.  Because both sets of interrogatory responses are unverified,

they must be struck.

## III.    CONCLUSION

Upon consideration of the four sets of  motions at issue, other than CBS's motions in

<u>Plue</u>, (10-68073 Doc. 153) and <u>Ferguson</u>, (08-90243 Doc. 73) , we conclude that they must be granted

in part and denied in part.  We find that interrogatory responses unverified by the Plaintiff, regardless

of the source of the information, are inherently deficient and must be struck.  We decline to accept

Defendants' invitation to strike interrogatory responses as prejudicial which may have been untimely

and/or improperly disclosed as such a determination would be premature.  The judge presiding over

the case when, and if, a Plaintiff attempts to rely on such information from an interrogatory response

will be in a much better position to engage in the prejudice analysis.

An appropriate Order follows.

**BY THE COURT:**


 **/s/ David R. Strawbridge**
**DAVID R. STRAWBRIDGE**
**UNITED STATES MAGISTRATE JUDGE**